**Howard HOSSMAN, Plaintiff-Appellant,**

**v.**

**William SPRADLIN, James Kimmel and Jack R. Duckworth, Defendants-Appellees.**

**No. 86–1358.**

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 2, 1986.

Decided Jan. 13, 1987.*

---

* Although our original disposition of this case was by unpublished order, we have, subsequently, decided to reissue the decision as a published opinion.

Howard Hossman, pro se.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before WOOD, Jr., FLAUM, and EASTERBROOK, Circuit Judges.

PER CURIAM.

Plaintiff-appellant, proceeding *pro se*, appeals from the decision of the district court granting summary judgment to defendants and dismissing appellant's constitutional tort suit brought pursuant to 42 U.S.C. § 1983. For the reasons set forth below, we affirm.

### I.

Appellant, an Indiana state prisoner, filed suit against defendants on July 17, 1984, alleging that his civil rights were violated as the result of (i) his having been locked in his cell on six specific mornings in June 1984 and (ii) the loss or destruction by prison officials of certain of appellant's "le-gal papers." Specifically, appellant's complaint alleged that his confinement to his cell on the six mornings in question deprived him of the opportunity to use the prison law library and thus infringed upon his fundamental constitutional right of access to the courts. Furthermore, appellant's confinement was claimed to have constituted both a violation of the Constitution's prohibition against cruel and unusual punishment and to have deprived him of his right, under the First Amendment, to attend prison religious services. Finally, the loss or destruction by defendants of certain legal papers belonging to appellant is alleged to have caused appellant to be deprived access to the courts and to amount to a deprivation of property without due process of law in violation of the Fourteenth Amendment.

Defendants filed a motion for summary judgment with the district court which appellant opposed but which the court granted. Appellant timely appealed and in so doing abandoned the First and Eighth Amendment claims he raised below.

### II.

■ Fed.R.Civ.P. 56(c) provides that the district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether the district court appropriately granted summary judgment, "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *International Administrators, Inc. v. Life Insurance Company of North America*, 753 F.2d 1373, 1378 (7th Cir.1985). Once a motion for summary judgment has been made and properly supported, however, the nonmovant does have the burden of setting forth specific facts showing the existence of a genuine fact for trial. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983); *see also* Fed.R.Civ.P. 56(e). Although a requisite, the mere existence of a factual dispute

is, nonetheless, not alone sufficient to bar summary judgment as it is well-settled that "a factual dispute does not preclude summary judgment unless ... the disputed fact is outcome determinative under governing law." *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). With these parameters for the proper granting of summary judgment in mind, we turn to a review of appellant's grounds for appeal.

### A. Was Appellant Denied Access to the Courts?

The Supreme Court acknowledged in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), that the fundamental constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. Appellant argues that he was deprived access to the Indiana State Prison law library on several occasions and was thus, in turn, denied access to the courts. In addition, appellant claims that the loss or destruction of certain "legal papers and law books" also deprived him of his constitutionally guaranteed access to the courts.

Appellant's claim that he was confined to his cell and prevented from gaining access to the prison law library on six separate mornings fails, in our view, to allege a sufficient denial of access to the courts. Decisions in this area quite understandably equate access to prison law libraries with the degree of access to the courts which prisoners have, heretofore, been constitutionally guaranteed. This court has previously interpreted the Supreme Court's holding in *Bounds, supra,* guaranteeing prisoners "meaningful" access to courts as requiring that they receive that quantum of access to prison libraries—not total or unlimited access—which will enable them to research the law and determine what facts may be necessary to state a cause of action. *See Campbell v. Miller*, 787 F.2d 217, 226 n. 15 (7th Cir.1986). Thus, where "meaningful" access to the courts is not denied as the result of inconvenient or even highly restrictive regulations governing the use of a prison law library, no constitutional guarantee to court access is violated.[1]

In the instant appeal there are conflicting claims concerning appellant's ability to have obtained access to the prison law library on the mornings in question or to have obtained access to the library in the afternoon when appellant was permitted to leave his cell for educational instruction. There is also the suggestion that appellant could have requested and received law books in his cell. Appellant both disputes the feasibility of these alternate methods of library access and fails to offer any evidence that he first resorted to and was then refused such alternate access. In effect, appellant is arguing an entitlement to the prison library on his own terms but given the realities of prison administration appellant's claim is extremely impracticable if not, in fact, impossible. *See e.g., Procunier v. Martinez*, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *accord, Crusoe v. DeRobertis*, 714 F.2d 752 (7th Cir.1983). Most importantly, however, appellant makes no specific allegations suggesting how his claimed inability to use the law library resulted in his being denied "meaningful" access to the courts and, hence, his constitutional rights.[2]

---

**1.** In this respect we cited approvingly in *Campbell* to the decision of the Ninth Circuit in *Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851 (9th Cir.1985).

> [T]he Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used.... The fact that an inmate must wait for a turn to use the library does

not necessarily mean that he has been denied meaningful access to the courts.

*Id.* at 858. *See also Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir.1985).

**2.** This court previously intimated that an allegation of "prejudice" might be necessary in order to defeat a motion to dismiss a claim asserting a denial of meaningful access to the courts. *See Bach v. Coughlin*, 508 F.2d 303, 308 (7th Cir.

■ With respect to appellant's assertion that the loss or destruction by defendants of appellant's legal papers and law books also deprived him of access to the courts, we conclude, once again, that appellant's allegations fail to rise to the level of a cognizable constitutional violation. Appellant, in opposition to defendants' motion for summary judgment, could and should have stated with specificity exactly what materials he was deprived of and how such deprivation resulted in his being denied the meaningful access to the courts to which he is entitled. Each of the cases cited by appellant in support of the contention that destruction or loss of a prisoner's legal papers by prison officials states a valid cause of action under § 1983 deals with a situation involving papers or documents crucial or essential to a pending or contemplated appeal.[3] The mere assertion by appellant, in both his response to defendants' motion for summary judgment and in his brief, that legal papers, transcripts[4] and law books were intentionally kept from him fails, without more, to demonstrate a constitutionally significant deprivation of meaningful access to the courts.[5]

We are not unmindful that appellant is proceeding *pro se* nor are we unaware that he is appealing from an adverse summary judgment, however, we do feel it appropriate to require appellant to articulate, to some degree, the basis for his claim that his access to the courts was significantly (i.e.—in a constitutional sense) impaired. Such facts are presumably best known to appellant and, consequently, asking him to include them in his complaint, so as to survive a motion for summary judgment, is not too onerous a burden to require him to bear.[6]

### B. Was Appellant Deprived of Property Without Due Process?

■ Appellant argues that as the result of defendants' intentional act of destroying his papers and law books he was deprived of property without due process in violation

---

1974). We are today, however, firmly of the opinion that, in order to proceed to trial and survive a motion for summary judgment, a plaintiff should be required, no matter how minimally, to allege some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation. For further discussion, *see* note 6, *infra.*

**3.** In *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975) (Stevens, J.), appellant claimed that time was of the essence because he had been recently furnished with a transcript of his trial and had only a brief period in which to petition the Illinois Supreme Court for review. Furthermore, Bonner specifically alleged that the loss of his transcript would interfere with his seeking post-conviction relief in Illinois. *Id.* at 1321, n. 29. Similarly, in *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969), the legal papers said to have been confiscated were alleged by appellant to be "essential" to a pending appeal. Finally, *Adams v. Carlson,* 488 F.2d 619 (7th Cir.1973), concerned a suit for injunctive relief mandating the return of legal materials held by prison officials after confiscation. We ordered the return of appellant's effects in *Adams* not on the basis of the fact that their continued retention deprived appellant access to the courts but rather because the unstable prison conditions which initially justified the confiscation had abated.

**4.** Throughout appellant's original complaint and his response to defendants' motion for summary judgment he refers only to having been deprived of "legal papers" and "lawbooks." These same items are mentioned exclusively in appellant's brief except for one reference to transcripts.

**5.** While in *Bonner* and *Adams* we interpreted broadly the right not to be deprived of materials necessary to afford reasonable access to the courts, our present insistence that plaintiffs allege some degree of interference with their right to meaningful court access evidences not a cramped view of the right we recognized in *Sigafus* but rather only a desire to ensure that a deprivation of the guaranteed level of court access, articulated by the Supreme Court in *Bounds v. Smith, supra,* actually occurred.

**6.** The modest degree of specificity we are today requiring of appellant's complaint is not without precedent. For example, the Eighth Circuit granted summary judgment in defendant's favor in a suit brought by a prisoner who alleged that his access to the courts was unconstitutionally violated when his mail privileges were suspended for 20 days. *Grady v. Wilken,* 735 F.2d 303 (8th Cir.1984) (record revealed no evidence that interruption of appellant's mail privileges in any way prejudiced his lawsuit). *But see Holloway v. Gunnell,* 685 F.2d 150 (5th Cir.1982) (the liberal construction to be given *pro se* pleadings prevents the dismissal of plaintiff's complaint without first allowing him the opportunity to supplement his conclusory allegations of denial of access to the courts with particularized facts).

of the Fourteenth Amendment. Unfortunately for appellant, the Supreme Court's recent decisions in the area of property deprivations by prison officials have held that the Due Process Clause of the Fourteenth Amendment is simply not implicated by a negligent act of a state official, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), nor by an intentional deprivation by a prison employee where the state has provided a meaningful post-deprivation remedy for the loss. *Hudson v. Palmer*, 468 U.S. 517, 531, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393 (1984).

Assuming the veracity of appellant's characterization of defendants' conduct as "intentional", as we must on an appeal by the non-moving party from a summary judgment, the existence of the Indiana Tort Claims Act, I.C. 34–4–16.5–1 *et seq.*, provides a constitutionally adequate remedy to redress property loss caused by a state officer and avoids appellant's claim that he was intentionally deprived of his property without due process of law. *Hudson, supra; Hendrix v. Faulkner*, 525 F.Supp. 435 (N.D.Ind.), *affirmed in part, vacated in part on other grounds*, 715 F.2d 269 (7th Cir.1983), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). To the extent that appellant seeks to distinguish his case from *Daniels* and *Hudson*, appellant fails to realize that the common thread between the two cases, and their relevance to the instant case, is not their factual similarity but rather what each has to say about the extent to which the requirements of due process are implicated in a § 1983 suit and the extent to which due process can be satisfied by remedies other than a civil rights suit under § 1983. Thus, despite appellant's assertion to the contrary, *Daniels* and *Hudson* are not only instructive, they are dispositive of his second argument.

## III.

In summary, we hold that (i) neither the confinement of appellant in his cell nor the loss or destruction of his legal papers, in the absence of any allegation of actual or probable detriment, amounted to a deprivation of meaningful access to the courts and (ii) the Due Process Clause of the Fourteenth Amendment does not furnish appellant with a basis for suit under § 1983 because a constitutionally adequate state tort claims act provides appellant with a suitable nonconstitutional remedy.

AFFIRMED.