Eugene **HUNTER**, Plaintiff,

v.

Michael **QUINLAN**, et al., Defendants.

No. 93 C 964.

United States District Court,
N.D. Illinois, E.D.

March 15, 1993.

Eugene Hunter, pro se.

No appearance for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Metropolitan Correctional Center ("MCC") inmate Eugene Hunter ("Hunter") seeks leave to file a self-prepared Complaint pursuant to 28 U.S.C. § 1331(a) ("Section 1331(a)") without payment of the filing fee. For the reasons stated in this memorandum opinion and order, such leave is denied and this action is dismissed without prejudice.

Because Hunter also labeled his Complaint "Under Seal—In Camera," a deputy clerk of this District Court reflexively filed the case under seal without receiving any directive from this Court. Hence this action is currently docketed as "Suppressed vs. Suppressed." But no reason has been shown for such underseal treatment, and so the Clerk is directed to remove the seal and to docket the case in the same manner as any other pro se prisoner case is docketed.

To turn to the substance of Hunter's Complaint, every pro se litigant seeking permission to proceed in forma pauperis has two potential barriers to cross before his or her formal entry into the federal courthouse:

1. he or she must make the required showing of financial indigency and

2. his or her complaint must disclose the existence of at least one non-"frivolous" claim in the legal sense described by *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) and most recently reconfirmed in *Denton v. Hernandez*, —— U.S. ——, ——–——, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992).

Here Hunter passes the first of those tests, for he has just 30 cents in his MCC prison trust account. But he falls at the second step—the substantive one.

Hunter alleges that while leaving his cell on his way to court on December 29, 1992, he was carrying a sealed letter addressed to his attorney and marked "Attorney Client Privilege." MCC Lt. Blangor ("Blangor") told Hunter that he could not take any sealed letters out of the institution and ordered him to put it back in his cell. Blangor then asked what the letter was about, and Hunter explained that it was a privileged communication. Blangor then ordered Hunter to open the letter, took it and read it, put it in his pocket and wrote up an incident report for violation of institution prohibited act No. 313, "Lying or Providing a false statement to a staff member."

At Hunter's January 2, 1993 disciplinary hearing, the hearing officer determined that the charge was not supported by the evidence and ordered the report expunged. Hunter asked that his letter be returned, which was done on January 6, 1993 with an explanation that Blangor was new to the job and did not know any better.

■ Hunter seeks several forms of relief: a temporary restraining order for defendants to release his legal mail, a permanent injunction prohibiting defendants from violating his Sixth and Fourteenth Amendment rights,[1] a declaratory judgment and compensatory and punitive damages. Analysis demonstrates, however, that he has no remedy because he sustained no constitutional harm.

■ *Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir.1992), quoting *Hossman v. Spradlin*, 812 F.2d 1019, 1021–22 n. 2 (7th Cir.1987), has reconfirmed that for an inmate to establish an infringement on his right of access to the courts, he must "allege some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." Hunter has alleged no such detriment, nor do the contents of the letter indicate that his litigation was compromised in any way by the admittedly improper opening of the letter to his attorney.

*Morgan v. Montanye*, 516 F.2d 1367 (2d Cir.1975) involved a situation remarkably similar to that presented here: a claim that prison officials had unconstitutionally interfered with mail that an inmate had sent to his attorney. There the complaint referred to a single instance in which mail from the attorney—clearly marked as legal mail—had been opened and inspected outside of the inmate's presence. In affirming the district court's dismissal of the action, *Morgan, id.* at 1370–72 held that the inmate had suffered no damages from the isolated incident, for there was no basis for finding that the attorney's effectiveness in representing the inmate was impaired or that the inmate's exercise of his right of access to the courts was in any way chilled. Cf. *Hundley v. Sielaff*, 407 F.Supp. 543, 548 (N.D.Ill.1975), denying Section 1983 relief for a single improper refusal to mail a letter.[2]

Here too it is apparent that the attorney's effectiveness was in no way compromised. There was nothing in the letter (which is attached as an exhibit to the Complaint) but an expression of thanks for the lawyer's support. Nothing legally substantive was set out. Nor can it be said that Hunter's right of court access was impaired, particularly in light of the official response to the incident: the disciplinary report was expunged, and Blangor's conduct was neither excused nor sought to be justified.

■ As for Hunter's request for an order directing that defendants release his legal mail, that issue is moot because the one letter was promptly returned to him and

---

1. Because the Fourteenth Amendment restrains only *state* action, while all defendants are federal officials, by definition that amendment does not come into play here. But that invocation of the wrong authority by nonlawyer Hunter has not affected him adversely—on the contrary, to the extent that Hunter's allegations might even arguably have implicated rights to due process, this Court has considered them under the Fifth Amendment, which does impose duties on federal officials.

2. Unlike the direct parallel posed by *Morgan*, *Hundley* was a substantially different case in two respects:

    1. What the prison employee did was to refuse to mail the letter—he did not open and read it.

    2. Hundley's addressee was his nonlawyer brother (an inmate in another prison), not his lawyer.

because there is no likelihood of recurrence of the single illegal seizure. And as to the Complaint's prayer for a permanent injunction, the same isolated and nonrecurring nature of the incident defeats that remedy. Of course Hunter's request for a declaratory judgment is denied as well, given the absence of any violation of a constitutional right. And finally, Hunter has shown no predicate for the recovery of either compensatory or punitive damages.

Accordingly this Court finds no arguable legal basis for the Complaint, and it denies Hunter's motion for leave to file in forma pauperis (see *Neitzke*). In accordance with the procedure prescribed by *Denton*, —— U.S. at ——, 112 S.Ct. at 1734, this action is dismissed without prejudice pursuant to 28 U.S.C. § 1915(d). In addition Hunter is informed:

1. If he wishes to appeal this order of dismissal, within 30 days after the entry of judgment he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit (see Fed.R.App.P. 4(a)). That Notice of Appeal must be filed with the Clerk of the Court of the United States District Court, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604.

2. Although this Court of course expresses no substantive views on this subject, Hunter should also be aware that if the Court of Appeals were to determine that such an appeal were "frivolous" in the legal sense, that could result in the imposition of sanctions by that Court (see Fed. R.App.P. 38).