John CASTEEL, Mark S. Hinton and Timothy A. Nesja, Plaintiffs,

v.

Leon R. PIESCHEK, Sheriff of the Brown County Jail, Robert Ellis, Commander, Edward Unknown, Sergeant, Jailor, et al., Defendants.

No. 87–C–1311.

United States District Court, E.D.Wisconsin.

Sept. 24, 1996.

ercise of visitation rights, (4) recognize the plaintiffs' exercise of mail rights, and (5) recognize constitutional due process rights regarding discipline. The Court also ordered that plaintiff Nesja be dismissed from the case for failure to prosecute. The plaintiffs appealed both rulings.

On August 23, 1993, the Seventh Circuit reversed our grant of summary judgment regarding the plaintiffs' claim that they were denied meaningful access to the courts and our dismissal of plaintiff Nesja for failure to prosecute, and remanded this case for further proceedings consistent with the opinion. *Casteel v. Pieschek,* 3 F.3d 1050 (7th Cir. 1993). As the Seventh Circuit did not address the remainder of the Court's summary judgment ruling, it remains intact regarding the plaintiffs' other claims. Specifically, the Seventh Circuit indicated that this Court:

> must resolve the qualified immunity question, ... determin[ing] which, if any, defendants should be dismissed because the plaintiffs have not made specific allegations of their personal participation in the claimed violations. Then [this Court] must consider the qualified immunity defense, deciding whether a reasonable county jail official could believe that the defendants' actions did not violate the appellants' right of access to courts, according to the established law at the time of the alleged violations.

*Id.* at 1055. The Seventh Circuit also recommended that this Court follow up Magistrate Judge Robert L. Bittner's March 1, 1988 Order appointing counsel for the plaintiffs with an actual appointment "to ensure intelligible briefing on the subject and a discernible statement of facts." *Id.* at n. 6.

Pursuant to the direction of the Seventh Circuit, on October 22, 1993, the Court ordered and acknowledged the following: (1) plaintiff Nesja be allowed to proceed with his co-plaintiffs on their claim that the defendants failed to provide meaningful access to the courts, (2) defendants Edward Hermans, Donald Barker, and Leon Piescheck be dismissed from this case, and (3) counsel be appointed for the plaintiffs for the purpose of re-briefing the issue of the viability of the

Thomas E. Brown, Kathryn A. Keppel, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Plaintiffs.

Raymond J. Pollen, Mark A. McClendon, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for Defendants.

### DECISION AND ORDER

WARREN, District Judge.

This case is before the Court on remand by the Seventh Circuit. By way of brief background, on January 8, 1991, this Court granted summary judgment for the defendants regarding each of the plaintiffs' Section 1983 claims, which included alleged failures by jail officials to (1) provide meaningful access to the courts, (2) recognize plaintiffs Casteel and Hinton's rights to exercise religious beliefs, (3) recognize the plaintiffs' ex-

plaintiffs' rights to access in light of the qualified immunity defense presented by the defendants in their motion for summary judgment. After concerted effort expended by both the *pro se* law clerk for the Eastern District of Wisconsin and this Court, the Court secured counsel for the defendants. The Court requested the parties re-brief the viability of the plaintiffs' access to courts claim in light of the qualified immunity defense presented by the defendants in summary judgment. Specifically, the parties were to focus on the issue of "whether a reasonable county jail official could believe that the access provided by the defendants complied with the constitutional requirements" in effect at the time of the alleged violations. On August 16, 1996, this case was fully briefed and ready for resolution by this Court.

## I. *FINDINGS OF FACT*

The following facts are undisputed. The Brown County Jail serves as a temporary holding facility for inmates such as plaintiffs who are incarcerated at other facilities yet must appear before the Brown County Circuit Court. (O'Connor Aff. at ¶ 3.) The plaintiffs were detained at the Brown County Jail temporarily between 1985–87 pending their court appearances on several felony charges. (*Id.* at ¶ 4–6.) Plaintiffs were represented by counsel throughout their criminal proceedings and had regular access to their counsel. (*Id.*) Plaintiffs' counsel was limited to assisting the plaintiffs with criminal actions and could not assist plaintiffs in pursuing their civil legal claims. (Plaintiffs' Brief in Opposition at pg. 3; Casteel Aff. ¶ 5.) Plaintiffs were eventually convicted and transferred from the jail to state correctional facilities.

For purposes of providing inmates access to legal materials, the Brown County Jail utilizes the law library which is in the Brown County Courthouse complex. Inmates admitted to the jail are provided written rules and regulations which note library services are provided on·a weekly basis. (O'Connor Aff. ¶ 7; Exh. 1.) The rules indicate that library books are available, the rules do not explicitly indicate that legal texts and materials are available.

In order to utilize the law library, inmates submit a "general request" form noting their need. Plaintiff Casteel has observed the procedure in actual operation in the jail. (Casteel Aff. ¶ 22.) Plaintiffs Hinton and Nesja signed their booking forms attesting to the fact that they received jail materials discussing the library procedures while Casteel refused to sign the form, and his refusal is noted. (O'Connor Aff. ¶¶ 8–10; Exhs. E–G.) Access to legal materials was limited to weekly written requests for specific materials rather than physical access to the legal materials. (*Id.* at ¶ 7.) In addition to access to the law library, the plaintiffs had access to and communication with the American Civil Liberties Union, the State Public Defender's Office and Legal Assistance to Incarcerated Persons, however these organizations cannot assist all persons who request their services, including the plaintiffs. (Casteel Aff. ¶ 12–16.) Plaintiff Casteel did not acquire legal materials through the request system but instead wrote inmates at other Wisconsin prison facilities in order to obtain information on legal issues. (Casteel Aff. ¶ 24, 32.) Plaintiffs' jail files show no general request forms were submitted so as to comply with the jail's procedures, and plaintiffs make no allegations that they indeed complied with the request procedures.

The plaintiffs legal claim is that while awaiting trial at the Brown County Jail they were denied access to the courts and were thus unable to advance several civil claims. (Plaintiffs' Brief in Opposition at pg. 2.)

## II. *STANDARD OF REVIEW*

Summary judgment is no longer disfavored under the Federal Rules. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to 'secure the just, speedy and inexpensive determination of every action.' "). Indeed, Federal Rule of Civil Procedure 56 requires a district court to grant summary judgment "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; the requirement is that there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute and that judgment should be entered in its favor. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A defendant moving for summary judgment may satisfy this initial burden by pointing to a plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53. A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

In evaluating a motion for summary judgment, the Court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Griffin v. City of Milwaukee*, 74 F.3d 824, 826–27 (7th Cir. 1996); *Johnson v. Pelker*, 891 F.2d 136, 138

(7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) (citations omitted.)

### III. DISCUSSION

The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 737 (7th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The invocation of qualified immunity depends on the "objective legal reasonableness" of the actions taken by the defendants. *Hall v. Ryan*, 957 F.2d 402, 404 (7th Cir.1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987)). Actions taken by local officials are considered objectively unreasonable if the right allegedly violated is clearly established in a "sufficiently particularized sense at the time of the actions at issue." *Hall*, 957 F.2d at 404. As a result of this reasonableness test, the doctrine of qualified immunity applies to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Examination of a summary judgment motion based on the doctrine of qualified immunity requires a two-part analysis: (1) Does the alleged conduct violate the plaintiff's constitutional rights?, and (2) If those rights were violated, were the constitutional standards clearly established at the time in question? *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 401 (7th Cir.1993). A negative answer to either prong of the two-party analysis settles the issue.

It is undisputed that the Brown County jail provided plaintiffs with access to their criminal counsel and mail access to organizations like the American Civil Liberties Union. Moreover, the plaintiffs had

weekly access to a library which had legal materials. The plaintiffs allege that they were not adequately informed that they had access to legal materials. However, the record reflects that plaintiffs Hinton and Nesja both received a copy of the jail rules which included an explanation of the library services available. It is not clear whether Casteel received a copy of the rules and refused to sign the booking sheet or whether he refused to receive a copy of the rules. Nonetheless, it is clear from Casteel's affidavit, even if he opted not to review the rules, he observed library materials being delivered to other inmates. Therefore, the Court concludes that given the access to the courts that the Brown County jail provided coupled with the plaintiffs failure to follow the appropriate procedures in place to obtain legal materials, the officials at Brown County jail did not violate plaintiffs access to the courts. Furthermore, a reasonable county jail official would believe that the policies and procedures in place at the Brown County jail provided meaningful access to the courts in compliance with the existing law.

A recent Supreme Court decision, *Lewis v. Casey*, —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), clarifies *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) and held that an inmate's right of access to the courts extends only so far as to present challenges to an inmate's criminal proceedings and to his conditions of confinement.

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, —— U.S. at ——, 116 S.Ct. at 2182. It is undisputed that plaintiffs had access to criminal counsel during their incarceration at the Brown County Jail. (Plaintiffs Brief in Opposition at pg. 3.) Therefore, plaintiffs cannot claim they were denied access to the courts to attack their convictions or sentences. However, plaintiffs contend that they were denied access to the court to pursue various unspecified civil claims. The defendants in their Reply brief have delineated the possible civil claims, namely researching personal legal documents, property bonds, child custody and negligence. (Reply Brief at 5.) These "civil claims" do not fall within the boundaries of attacking convictions or sentences or conditions of confinement. Therefore, the plaintiffs have failed to allege a violation of their constitutional right of access to the courts.

Plaintiffs argue that weekly request access to the Brown County law library is insufficient and basically contend that physical access to a law library is required. However, this argument has been rejected by *Lewis* as a misreading of *Bounds*. The Supreme Court stated in *Lewis* that no particular methodology is guaranteed, rather, "the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.... it is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Lewis*, —— U.S. at ——, 116 S.Ct. at 2182

The record reflects that the defendants provided a greater means of access to the courts than the clearly established law required. In particular, plaintiffs were able to correspond via the mail with organizations like the ACLU and Legal Assistance to Incarcerated Persons. (Casteel Aff. ¶¶ 12–16.) In *Casteel*, the Seventh Circuit held that jail officials need only show "letter access to legal assistance organizations which handle meritorious civil claims" to gain qualified immunity. *Casteel*, 3 F.3d at 1054. It is undisputed that plaintiffs had access to these organizations.

■ In conclusion, the Court determines that jail officials provided inmates with letter access to legal assistance organizations and weekly request access to a law library. Pursuant to the *Lewis* decision, the plaintiffs' constitutional right of access to the courts was not violated. And even if it is deter-

mined that this level of access is unconstitutional, a reasonable jail official providing this type of access to the courts would not have known that this level of access violated established law on the right of access to the courts. It is clear to the Court that defendants are entitled to qualified immunity.

■ Finally, as an aside the Court would like to point out, that in order to support a claim of denial of access to the courts, an inmate must prove actual injury. On January 8, 1991, in the Court's Decision and Order granting summary judgment the Court stated:

### A. Access to the Courts

As the Seventh Circuit recently related in *Martin v. Davies*, 917 F.2d 336 (7th Cir. 1990):

> Prison officials have an affirmative duty to provide inmates with reasonable access to the courts, which includes providing access to adequate libraries (or counsel). *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir.1988). The right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Nonetheless, reasonable access does not mean unlimited access. *Hossman v. Spradlin*, 812 F.2d 1019, 1021 (7th Cir.1987).

917 F.2d at 338. This recognized constitutional guarantee requires that prisoners receive "access to prison libraries—not total or unlimited access—which will enable them to research the law and determine which facts may be necessary to state a cause of action." *Hossman*, 812 F.2d at 1021.

Each of the plaintiffs in this action were represented by counsel. June 16, 1989 O'Connor Affidavit Exhibits B–D. Through the use of these attorneys there is nothing to indicate that plaintiffs' representation of access to the courts has been inadequate. Further, Lauran T. O'Connor, commander of the jail division of Brown County, has asserted that inmates at the Brown County Jail are provided access to legal and other library materials on a weekly basis. *Id.* at ¶ 7. In contrast, the plaintiffs have presented no cognizable facts as to how they have been prejudiced by Brown County's procedures. The Seventh Circuit requires "that some showing of detriment caused by the challenged conduct must be made in order to succeed on a claim alleging a deprivation of the right to meaningful access to the courts." *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987). None of the plaintiffs at bar have alleged facts upon which this Court could find that the determinations of their rights were affected by an allegedly limited access to the legal materials. Because this Court has not found a denial of the plaintiffs' constitutional rights on this matter, nor have the plaintiffs presented a claim of detriment resulting from the alleged deprivation of access to the courts, the plaintiffs' Section 1983 claims on this issue fail to survive the defendants' summary judgment motion. The plaintiffs have failed to allege specific instances in which they may have been prejudiced by an alleged denial of their right of access to the courts. Court's Decision and Order, January 8, 1991 at pgs. 10–12. In *Lewis*, the Supreme Court reiterated that:

> *Bounds* did not create an abstract, free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense.... the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.... Although *Bounds* itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite.

*Lewis*, —— U.S. at ——, 116 S.Ct. at 2180. Plaintiffs have failed to make a showing of actual injury.

In conclusion, the plaintiffs' have failed to demonstrate that they were denied their constitutional right of access to the courts as clarified by *Lewis v. Casey*. Moreover, defendants are entitled to immunity from suit under the doctrine of qualified immunity.

Therefore, the defendants' motion for summary judgment is granted.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** the defendants' motion for summary judgment is **GRANTED** and this case is **DISMISSED** in its entirety.